IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| J.D., by his father and next friend, BRIAN DOHERTY,<br><br>    Plaintiff,<br><br>    v.<br><br>COLONIAL WILLIAMSBURG FOUNDATION<br>P.O. Box 1776<br>Williamsburg, VA 23187-1776<br><br><br>    <u>Serve On</u>:<br>    Mitchell Reiss, President<br>    Colonial Williamsburg Foundation<br>    P.O. Box 1776<br>    Williamsburg, Virginia 23187-1776<br><br>    Defendant. | JURY TRIAL DEMANDED<br>Civil Action No.: |

**COMPLAINT**

Plaintiff, J.D., through undersigned counsel, sues Colonial Williamsburg Foundation, and states as follows:

**PRELIMINARY STATEMENT**

1. J.D. ("Plaintiff") is an eleven-year-old student who loves history, travel and Tae Kwon Do and who resides in Maryland with his mother and father. J.D. has a medical condition for which he receives treatment at Johns Hopkins that prevents him from safely eating foods containing wheat and gluten – when he ingests foods containing wheat and gluten J.D. has a cascade of significant symptoms to include syncope (loss of consciousness), pain,

1

difficulty concentrating, and asthma flares, and in the period after ingesting even trace amounts of gluten has required emergency medical treatment. In May of 2017, J.D. traveled to Colonial Williamsburg with his fifth grade class for a long-anticipated educational experience that included a visit to Shields Tavern, an experiential learning program owned and operated by the Colonial Williamsburg Foundation ("Defendant" or "Colonial Williamsburg"). Although he could not eat the food offered because of his disability, J.D. was eager to participate, learn, and experience colonial life to the full extent his disability allowed. J.D. helped raise funds for five years to pay for the trip, including the cost of a visit to Shields Tavern. Colonial Williamsburg Foundation violated Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, and the Virginia Rights of Persons with Disabilities Act when it required J.D. to leave its facility to eat and excluded J.D. from participation alongside his peers solely because of his disability.

2. Plaintiff seeks declaratory and injunctive relief, compensatory damages, and attorneys' fees, and costs.

## THE PARTIES

3. Plaintiff, J.D., lives in Anne Arundel County, Maryland with his parents. He is an eleven-year-old student who recently completed 5th grade.

4. Defendant, Colonial Williamsburg Foundation, is a Virginia non-profit that provides educational experiences to visitors of all ages, including school tour groups, with a stated mission of "feed[ing] the human spirit by sharing America's enduring story." Colonial Williamsburg Foundation describes its venue not as someplace to visit but as someplace to experience, stating it is "the only place that takes you back in time to the dawn of America" and invites visitors to "[s]tep back in time and meet the people who made America – sing with

them, dance with them, eat with them, and have fun with them." Colonial Williamsburg welcomes school groups to experience colonial life promising to provide students with an opportunity to "be active participants in the colonial world." Colonial Williamsburg Foundation is located at 100 Visitor Center Drive, Williamsburg, Virginia 23185 but receives correspondence at P.O. Box 1776, Williamsburg, Virginia, 23187-1776.

5. Among the experiences it offers visitors, Colonial Williamsburg Foundation owns and operates a venue located at 422 East Duke of Gloucester Street in Williamsburg, Virginia called Shields Tavern that allows visitors to experience life in a colonial gathering place.

6. Colonial Williamsburg Foundation is a recipient of federal financial assistance as well as state funding.

## JURISDICTION

7. Jurisdiction over these claims is invoked pursuant to 28 U.S.C. § 1331, 1332, 1343, and 1367.

## FACTUAL ALLEGATIONS

8. J.D. is an eleven-year-old who attends elementary school in Maryland. He is fascinated by history and dreams of being a history professor when he grows up. J.D. loves reading and can always be found with a book in his hands, often a book about history. He enjoys traveling, particularly when the travel allows him to learn about the past. J.D. also has significant health conditions that cause substantial impairment to the major life activities of eating, breathing, standing and thinking. J.D.'s specialists have not been able to determine whether he has Celiac Disease or whether he has Non-Celiac Gluten Sensitivity as is often the case with children experiencing similar symptomology. Regardless, multiple specialists at Johns Hopkins have concluded that it is critical J.D. not ingest gluten, even in trace amounts. When J.D. eats

foods containing gluten, he experiences precipitous drops in blood pressure that result in him losing consciousness (syncope). When he experiences syncope, he is at risk of and has received head injuries requiring hospital treatment. He also requires emergency treatment if his episodes of syncope last longer than five minutes. When J.D. accidentally ingests gluten, his symptoms have lasted up to six months requiring medical care and treatment and careful monitoring.

9. It is not a dietary preference for J.D. to avoid gluten – it is a medical necessity. At school, at playdates, and at special events, J.D. is simply not able to safely eat the food offered and instead his parents take care to pack and send him with safe food. In this way, J.D. can do what other children do, except he must be very careful not to eat food that is unsafe for him.

10. The culmination of 5th grade at J.D.'s elementary school is an overnight visit to Colonial Williamsburg. Children, including J.D., begin raising money to fund the trip in first grade.

11. Throughout his 5th grade year, J.D.'s class prepared for the much anticipated visit to Colonial Williamsburg. Beginning in August of 2016, J.D. began work on a year-long research project. The curriculum is designed to prepare the children for the trip. J.D. read *Blood on the Water* and *Chains*, learned about Jamestown and wrote a paper about political life in the British Colony for which he received a grade of A+.

12. In May of 2017, J.D. traveled with his class of approximately 30 children and 30 adults to Colonial Williamsburg to learn about and experience life in Colonial America.

13. J.D.'s school arranged the trip through the Colonial Williamsburg Foundation. The paid educational experience included a visit to Shields Tavern to allow the children to experience social life and customs of the 1700's.

14. Although J.D. was unable to eat the meals on the trip, he was happy to enjoy all other aspects of the learning experience.

15. J.D.'s father, Brian Doherty, was a chaperone on the trip and brought safe food from home for J.D. to eat so J.D. could experience Colonial Williamsburg alongside his peers.

16. Students who visit Colonial Williamsburg are told they will be "immersed in 18th-century Virginia's colonial capital city." Defendant promises its "interactive programs and cross-curricular investigations will engage students' minds" and that students "will see and experience life as the founding families did in the 1700s…"

17. A highlight of the visit to Colonial Williamsburg was an experience at Shields Tavern. Shields Tavern is an historic tavern owned and operated by Defendant. At Shields Tavern, costumed historical interpreters offer guests the experience of life in a Colonial tavern and provide "a glimpse into the cosmopolitan nature of the British Colonies." Costumed servers circulate and teach guests about various aspects of tavern life including the social and practical aspects of colonial life. Guests are also served a meal while at Shields Tavern.

18. On May 11, 2017, J.D. and his father arrived with their group for the educational experience at Shields Tavern and were seated like the other participants. Upon information and belief, J.D.'s school group were the only guests at Shields Tavern and seats had been reserved for them. Although J.D. knew he could not eat the food, he was excited for the experience.

19. After J.D. and his father were seated, Mr. Doherty informed the historical interpreter assigned to their table that J.D. was unable to safely eat the food because of his disability so it was not necessary to bring him a meal. Mr. Doherty explained that J.D. would be happy to just enjoy the experience. Mr. Doherty explained that he had safe food for J.D. and proceeded to bring out the safe food. Another costumed interpreter told Mr. Doherty that he and

his son could not stay if J.D. was going to eat his food and would need to leave the premises immediately.

20.  Mr. Doherty requested to speak with a manager but the manager also told J.D. in front of his peers and their parents that he would need to immediately leave the building if J.D. was going to eat his safe food.

21.  J.D. was crying openly as he was removed from Shields Tavern in front of his peers.

22.  J.D.'s teacher spoke up on J.D.'s behalf and attempted to convince Shields Tavern management to allow J.D. to remain and learn just like the other children. Management refused and insisted J.D. wait outside. As part of this conversation, it was revealed that Shields Tavern permits toddlers to eat outside food, including goldfish and Lunchables inside the restaurant.

23.  It was raining and cool in Williamsburg on May 11, 2017. J.D., crying and humiliated, was made to sit outside Shields Tavern in the rain and wait while his classmates learned about colonial life and ate their meals.

24.  The experience was deeply humiliating for an eleven-year-old boy. Before his exclusion, J.D. was able to participate fully with his peers with confidence. After his exclusion and because of Defendant's callous and discriminatory conduct, J.D. felt less worthy than other children and embarrassed by his disability.

25.  After his exclusion from Colonial Williamsburg, J.D. became self-conscious about his medical condition and began to expect that he would be unwanted and excluded.

26.  J.D.'s family intend to return to Williamsburg later this year but J.D. remains unable to equally access all of the programming Colonial Williamsburg offers.

27. Defendant is a recipient of federal financial assistance because it has accepted $3,574,964 in federal funds from a wide variety of agencies including the National Foundation on the Arts and Humanities, Department of Defense, Department of Homeland Security, General Services Administration, and Department of the Treasury.

28. Defendant is a recipient of state financial assistance because it has received state funding for tourism purposes, including from the Virginia Tourism Corporation, a state agency.

## COUNT I
## SECTION 504 OF THE REHABILITATION ACT OF 1973

29. Plaintiff, J.D., repeats and re-alleges the foregoing paragraphs in support of this claim.

30. Plaintiff is a qualified individual with a disability under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 because he is substantially limited in the major life activities of breathing, standing, thinking, and eating and was a visitor to Colonial Williamsburg.

31. Defendant is a recipient of federal financial assistance because it has accepted $3,574,964 in federal funds from a wide variety of agencies including the National Foundation on the Arts and Humanities, Department of Defense, Department of Homeland Security, General Services Administration, and Department of the Treasury.

32. Defendant discriminated against the Plaintiff solely on the basis of his disability by excluding him from the educational experience it offered to other non-disabled children. In so doing, Defendant denied J.D. meaningful access and an equal opportunity to participate in and benefit from Defendant's programs and activities in violation of Section 504 of the Rehabilitation Act.

33. Defendant's exclusion of J.D. was intentional. When informed that J.D. could not safely eat the food because of his disability, Defendant refused to allow him to otherwise

participate in its program and required him to leave the building and eat outside because of his disability.

34. J.D. was injured as the result of Defendant's conduct. In requiring this eleven-year-old child to eat outside in the rain while his peers benefited from the educational experience Defendant offered others, Defendant subjected J.D. to humiliation, embarrassment, and isolation on the basis of his disability. J.D.'s family regularly visits Williamsburg, Virginia, have a plan to visit later this year, and intends to return to Colonial Williamsburg on their next visit. However, J.D. remains unable to access the programming at Shields Tavern due to Defendant's discriminatory policies and practices.

## COUNT II
## AMERICANS WITH DISABILITIES ACT

35. Plaintiff, J.D., repeats and re-alleges the foregoing paragraphs in support of this claim.

36. Title III of the ADA prohibits discrimination based on disability by businesses and nonprofit organizations that serve the public. 42 U.S.C. 12182(a); see also 42 U.S.C. 12181(7) (defining "public accommodation").

37. Defendant is a place of public accommodation because it is, *inter alia*, a "place of education," a "place of public gathering," a "place of exhibition or entertainment," a "place of recreation". 42 U.S.C. § 12181.

38. J.D. is an individual with a disability because he is substantially limited in the major life activities of eating, standing, thinking, and breathing.

39. J.D. was qualified to visit Shields Tavern because he was part of a tour group scheduled to experience Shields Tavern.

8

40. Defendant excluded J.D. from its programs and activities and denied him the opportunity to participate in violation of 42 U.S.C. 12182(b)(1)(A)(i) ("It shall be discriminatory to subject an individual… on the basis of a disability or disabilities… to a denial of the opportunity of the individual… to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.").

41. Defendant must "make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the [entity] can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations." 28 C.F.R. 36.302(a); *see also* 42 U.S.C. 12182(b)(2)(A) (an entity must offer reasonable modifications, accommodations, and auxiliary aids and services).

42. Defendant violated the Title III of the ADA by excluding J.D. from Shields Tavern on the basis of his disability and by refusing to modify its policies or practices.

43. J.D.'s family visits Williamsburg regularly and plans to return to Colonial Williamsburg later this year. J.D. would like to experience Shields Tavern but remains unable to do so because of Defendant's discriminatory policies and practices.

## COUNT III
## VIRGINIA RIGHTS OF PERSONS WITH DISABILITIES ACT

44. Plaintiff, J.D., repeats and re-alleges the foregoing paragraphs in support of this claim.

45. Plaintiff is a qualified individual with a disability under the Virginia Rights of Persons with Disabilities Act because he is substantially limited in the major life activities of breathing, standing, thinking, and eating and was a visitor to Colonial Williamsburg.

9

46. Upon information and belief, Defendant is a recipient of state financial assistance because it has received state funding for tourism purposes, including from the Virginia Tourism Corporation, a state agency.

47. Defendant discriminated against the Plaintiff solely on the basis of his disability by excluding him from the educational experience it offered to other non-disabled children. In so doing, Defendant denied J.D. meaningful access and an equal opportunity to participate in and benefit from Defendant's programs and activities in violation of the Virginia Rights of Persons with Disabilities Act.

48. Defendant's exclusion of J.D. was intentional. When informed that J.D. could not safely eat the food because of his disability, Defendant refused to allow him to otherwise participate in its program and required him to leave the building and wait outside because of his disability.

49. J.D. was injured as the result of Defendant's conduct. In requiring this eleven-year-old child to wait outside in the rain while his peers benefited from the educational experience Defendant offered others, Defendant subjected J.D. to humiliation, embarrassment, and isolation on the basis of his disability.

50. J.D.'s family regularly visits Williamsburg, Virginia, have a plan to visit later this year, and intends to return to Colonial Williamsburg on their next visit. However, J.D. remains unable to access the programming at Shields Tavern due to Defendant's discriminatory policies and practices.

**RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court provide the following relief:

a. Issue a declaratory judgment that Defendant's policies, procedures, and practices have subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act of 1973, Title III of the Americans with Disabilities Act, and the Virginia Rights of Persons with Disabilities Act;

b. Enjoin Defendant from any policy, procedure, or practice that will deny Plaintiff meaningful access to and an equal opportunity to participate in and benefit from Defendant's services or that will exclude Plaintiff from its programs or services;

c. Order Defendant to promulgate and comply with policies and procedures to ensure that Defendant does not discriminate in the future against Plaintiff;

d. Order Defendant to train all its employees about its obligations pursuant to federal law and about Defendant's policy and procedures for allowing access for individuals with disabilities;

e. Award compensatory damages pursuant to Section 504 of the Rehabilitation Act of 1973 and the Virginia Rights of Persons with Disabilities Act;

f. Award reasonable costs and attorneys' fees; and

g. Award any and all other relief that may be necessary and appropriate.

Date: July 19, 2017

        Respectfully submitted,

        s/Michael S. Stein
        Michael S. Stein
        Mary Vargas*
        STEIN & VARGAS, LLP

        840 First Street NE
Third Floor
Washington, DC 20002
Tel: (202) 248-5092
Fax: (888) 778-4620
Michael.Stein@steinvargas.com
Mary.vargas@steinvargas.com

*Mary C. Vargas simultaneously files her Application to Qualify as a Foreign Attorney Under Local Civil Rule 83.1(D) seeking leave to participate *pro hac vice*.

## JURY DEMAND

Plaintiff hereby demands that this action be tried before a jury.

s/Michael S. Stein<br>
Michael S. Stein