UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | | |
|---|---|---|
| J.D., by his father and next friend, | ) | |
| BRIAN DOHERTY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. 4:17-CV-101 (RBS-RJK)** |
| | ) | |
| COLONIAL WILLIAMSBURG | ) | |
| FOUNDATION, | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT COLONIAL WILLIAMSBURG FOUNDATION'S OBJECTIONS TO THE PORTION OF THE MAGISTRATE'S REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S DISABLED STATUS

Defendant Colonial Williamsburg Foundation ("CWF"), by counsel, hereby submits its objections to portions of the Magistrate Judge's Report and Recommendation ("R&R"). The Magistrate Judge has recommended that this Court grant CWF's motion for summary judgment, but concluded that a genuine issue of material fact exists regarding whether Plaintiff is disabled. CWF objects only to this portion of the R&R.

## I.     INTRODUCTION

The Magistrate Judge reached the correct result in this case, holding that Plaintiff cannot prevail because CWF offered him gluten-free meals, and Plaintiff's proposed modification was unnecessary. However, the Magistrate Judge also concluded that a genuine issue exists as to whether Plaintiff is disabled in the first place. CWF objects to this conclusion because Plaintiff's impairment does not substantially limit any major life activity *in his life*, and even if it did, Plaintiff could avoid these impacts simply by avoiding gluten.

## II.  BACKGROUND

CWF's Memorandum in Support of its Motion for Summary Judgment (Doc. 20) provides all of the undisputed material facts that are relevant to its Motion.  In considering the Magistrate Judge's conclusion that Plaintiff may be disabled, though, the Court need only consider a few, undisputed facts:

Despite never testing positively for Celiac Disease, J.D.'s parents placed him on a gluten-free diet six years before the events involved in this case, when he was five years old.  (Deposition of Brian Doherty "Doherty Dep." 40, excerpts collectively attached hereto as Exhibit 1.)  As a consequence of this decision, according to J.D.'s parents, his health is now very good.   J.D.'s father has "no concerns" about J.D.'s health since J.D. adopted a gluten-free diet.  (Doherty Dep. 45.)  J.D.'s mother goes even further, stating that since J.D. started a gluten-free diet "the change in the quality of his life and his health was nothing short of miraculous".  (Plaintiff's Opposition Exhibit D (Doc. 68-4), Kristen Doherty Affidavit ¶ 6.)  Maintaining this kind of gluten-free diet is not difficult because gluten-free foods are widely available.   Plaintiff's expert admitted that "there are tens of thousands of products that are certified gluten-free" in the marketplace.  (Deposition of Julie Rasmussen "Rasmussen Dep." 64-65, excerpts collectively attached hereto as Exhibit 2).  Shields Tavern's head chef noted that gluten-free options are widely available at restaurants, too, and that he prepares four to five gluten free meals at the request of patrons every day.  (Declaration of Tony Zurowski "Zurowski Decl.", attached hereto as Exhibit 3.)

J.D.'s father also testified that J.D.'s gluten-intolerance does not limit his life activities in any significant respect.  (Doherty Dep. 45-46.)  For example, he takes Tae Kwon Do classes, and participates in any other sport that interests him.  (Doherty Dep. 48-49.)  J.D. can avoid gluten, and as long as he does, there is nothing that he wants to do but cannot.  (*Id.*)  When asked to identify the life activities impacted by J.D's condition, his father noted only that J.D. may not be

able to join the military when he is older, and he cannot bike to the corner store or McDonald's to buy a Snickers bar or ice cream.  (*Id.*)

## III.    STANDARD OF REVIEW

The portions of a magistrate judge's report and recommendation to which a party has submitted objections are reviewed *de novo*.  28 U.S.C. § 636(b)(1)(C).  Following its review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

## IV.    ARGUMENT

No genuine issue exists as to whether Plaintiff is disabled because he has failed to identify a major life activity *in his life* that is substantially limited by his impairment.  Furthermore, Plaintiff could avoid any limitations on his life simply by avoiding gluten.

### A.    Plaintiff's Impairment Does Not Substantially Limit Any Of His Major Life Activities

To prevail on his disability claims, Plaintiff must show that he has (i) a physical or mental impairment that, (ii) substantially limits, (iii) one or more major life activities.  *See* 42 U.S.C. § 12102(1)(A); *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001).  In this case, Plaintiff has presented evidence of his sensitivity to gluten, but this is only part of Plaintiff's burden.  He still must show that this sensitivity "substantially limits one or more major life activities." *Bennett v. Kaiser Permanente*, 931 F. Supp. 2d 697, 709 (D. Md. 2013).  To satisfy this burden, he cannot "simply…submit[] evidence of a medical diagnosis of an impairment." *Id*. Rather, he must "offer evidence that the impairment causes substantial limitation *in terms of [his] own [life] experience*." *Id.* (internal quotations and citations omitted).

In determining whether Plaintiff is substantially limited in the major activities of his life, the Court can only consider the major life activities Plaintiff identifies.  *See Kravstov v. Town of*

*Greenburgh,* No. 10-CV-3142 CS, 2012 WL 2719663, at *10 (S.D.N.Y. July 9, 2012) ("plaintiff

must…<u>identify the activity claimed to be impaired</u>… and show that his impairment substantially

limits the major life activity <u>previously identified</u>." (internal quotations omitted; emphasis added).

In this case, Plaintiff's father has only identified two activities impacted by J.D.'s gluten-

sensitivity.  First, he may not be able to join the military when he's older.  Second, J.D. cannot

bike to the corner store or McDonald's to buy and eat a Snickers bar or ice cream.  This is

presumably his father's way of describing how J.D. cannot eat products containing gluten.  Neither

activity is a major life activity.

### 1.   Joining the military and eating gluten-heavy foods are not major life activities.

"A major life activity is an activity that is 'of central importance to daily life….'" *Beaton*

*v. Metro. Transportation Auth. New York City Transit*, No. 15 CIV. 8056 (ER), 2016 WL 3387301,

at *5 (S.D.N.Y. June 15, 2016) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir.

2005)).  J.D.'s interest in joining the military is commendable, but this type of service is not a

major life activity.  *See Burrell v. Cummins Great Plains, Inc.*, 324 F. Supp. 2d 1000, 1012–13

(S.D. Iowa 2004) (rejecting plaintiff's contention that "the inability to enroll in the military" was

a major life activity substantially limited by his diabetes); *see also Reinhart v. Shaner*, No. CIV.A.

02-T-1315-N, 2004 WL 419911, at *3 (M.D. Ala. Feb. 9, 2004) (finding life activity of working

not substantially limited just because plaintiff cannot join the military).  Even if joining the military

were a major life activity, J.D. is far from military age, and this alleged limitation is speculative.

Riding a bike to the corner store or McDonald's to purchase and eat a Snickers bar or ice

cream is not a major life activity either.  Considered in the light most favorable to J.D., his father

is saying here that J.D. cannot eat foods containing gluten, which he might otherwise enjoy.  But

carefree eating is not a major life activity.  As the Court observed in *Fraser v. Goodale*, "[i]f a

person is impaired only from eating chocolate cake, he is not limited in a major life activity because eating chocolate cake is not a major life activity." 342 F.3d 1032, 1040 (9th Cir. 2003).

Neither of these activities identified by J.D.'s father are "major life activities."  Plaintiff, therefore, cannot prove disability because he is constrained in his case by the life activities that he identified.[1]    See *Kravtsov*, 2012 WL 2719663, at *10; *Nolan v. Vilsack*, No. CV1408113ABFFMX, 2016 WL 3678992, at *5 (C.D. Cal. June 30, 2016) (no genuine issue of disability when plaintiff "admitted in his deposition that neither his celiac disease nor his dyslexia significantly affects his work as a firefighter or his day-to-day living."); *Kelly v. Kingston City Sch. Dist., Inc.*, No. 116CV00764MADDJS, 2017 WL 976943, at *3 (N.D.N.Y. Mar. 13, 2017) (plaintiff cannot be disabled if he admits his Celiac Disease is "well managed with a strict diet."). Whether another plaintiff with Celiac Disease may be able to meet the burden of proving disability is not before this Court; as a matter of law this Plaintiff cannot, because he has admitted the limitations he experiences impact, at most, only *minor* life activities.

## 2.    Avoiding gluten does not substantially limit "eating".

Even if the Court goes beyond the life activities Plaintiff identified as limiting (which it should not), avoiding gluten does not "substantially limit" the major life activity of eating.  On the subject of eating, courts consider whether *the physical act of eating* is limited in any way, not whether the plaintiff is limited in *the range of food options available for eating*.  *See Land v. Baptist Med. Ctr.*, 164 F.3d 423, 425 (8th Cir. 1999) ("Although [plaintiff] cannot eat foods containing peanuts or their derivatives, the record does not suggest that [she] suffers an allergic reaction when she consumes any other kind of food or that her *physical ability to eat* is in any way

---

[1] The parties have stipulated that J.D. will not testify at trial.

restricted.") (Emphasis added).[2]  Notwithstanding the myriad symptoms he allegedly experiences when he ingests gluten, Plaintiff does not suggest that he is in anyway limited in the physical act of eating.  He is able to ingest food like anyone else.  If he sticks to a gluten-free diet, he digests the food without incident.  He is not, for example, like the plaintiff in *Kravstov*, who "must eat in a reclining or semi-reclining position and continue to recline for ten to fifteen minutes or more afterwards."  2012 WL 2719663, at *1.  To the contrary, he is symptom-free when he avoids gluten and there is no suggestion, for example, that he cannot eat foods containing the necessary nutrients and proteins he needs for a healthy diet.

Moreover, even if the Court focuses on Plaintiff's eating options (which it should not), Plaintiff is not "substantially limited" in this regard, either.  Gluten is not an unavoidable ingredient in food, but rather exists, by Plaintiff's admission, only in wheat, barley, rye, and triticale.  One need only walk through a grocery store to know that gluten-free foods are widely available. Plaintiff's expert confirmed this fact: "there are tens of thousands of products that are certified gluten-free.  It's not a handful."  (Rasmussen Dep. 64-65).  J.D. has managed to avoid gluten effectively for years.  Thus, he is not disabled.

The court reached the same conclusion in *Phillips v. P.F. Chang's China Bistro, Inc.*, No. 5:15-CV-00344-RMW, 2015 WL 4694049 (N.D. Cal. Aug. 6, 2015) ("*Phillips I*"), holding that

---

[2] The Magistrate Judge states that reliance on *Land*, and any case that cites to it, is "problematic" because it pre-dates the ADAAA.  But *Land* and other pre-ADAAA cases still provide persuasive authority to this Court if their reasoning remains sound under the ADAAA.  The Eighth Circuit's reasoning that the plaintiff in *Land* was not disabled because the physical act of eating was not limited by the plaintiff's peanut allergy withstands the ADAAA's directive to construe "substantial[] limit[ations]" more broadly because the plaintiff's ability to eat in that case, the court concluded, was in no way limited, substantially or otherwise.  This is why courts continue to rely on *Land* and other pre-ADAAA cases, and why this Court should, too.  *See, e.g., Hustvet v. Allina Health Sys.,* 283 F. Supp. 3d 734, 740 (D. Minn. 2017) ("The Court recognizes that [*Land*] and other cited cases apply the pre-amendment ADA standards, but the Court still finds the cases persuasive in view of the current standards.").

gluten-sensitivity does not substantially limit a major life activity because a sufferer can simply "avoid the consequences of her alleged disability by avoiding the ingestion of gluten." *Id.* at *4. The *Phillips I* court held that Celiac Disease does not even "limit" —let alone "*substantially* limit" —a major life activity, denying the plaintiff's claim under California's Unruh Act, as well, which "covers conditions that merely 'limit' a major life activity." *Id.* at *3-4.

As the Magistrate Judge noted, the court ultimately allowed the plaintiff in *Phillips I* to proceed with her claim (*see* "*Phillips II*") because on a motion to dismiss the Court had to accept the plaintiff's bald assertion that she could not eat any food provided by the restaurant in question. *Phillips v. P.F. Chang's China Bistro, Inc.*, No. 5:15-CV-00344-RMW, 2015 WL 7429497, *3 (N.D. Cal. Nov. 23, 2015) ("*Phillips II*").  Here, the Court is considering a motion for summary judgment.  The record is complete in this case, and it establishes that J.D. can eat any food he wants among "tens of thousands" of options.  Therefore, he is not substantially limited in the life activity of eating, either.

## B.      The Court Can Consider Whether Plaintiff Is Limited In Any Way If He Simply Avoids Gluten

In his Opposition to CWF's Motion, Plaintiff argued that the Court could not consider his ability to avoid gluten because this is a "mitigating measure" that the ADAAA directs the Court to disregard.   The Magistrate Judge concluded that avoiding gluten was a "behavioral modification" that should not be considered in the disability calculus.  (R&R at 21 n. 20).

The ADA states that "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." *See* 42 U.S.C. § 12102(4)(E).   The statute provides the following examples of "mitigating measures:"

> (I) medication, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact

lenses), prosthetics including limbs and devices, hearing aids and
cochlear implants or other implantable hearing devices, mobility
devices, or oxygen therapy equipment and supplies;
(II) use of assistive technology;
(III) reasonable accommodations or auxiliary aids or services; or
(IV) learned <u>behavioral</u> or adaptive neurological <u>modifications</u>.

*Id.* (emphasis added).

Thus, the ADA directs courts to disregard proactive tasks that plaintiffs perform to ameliorate their conditions. But avoiding gluten is not a proactive, mitigating measure. It is simply the avoidance of a food product, and the Court can and should consider whether such avoidance renders the impairment a non-issue. *See Capobianco,* 422 F.3d at 59 n.9 (distinguishing between mitigation, or "amelioration of the impairment itself," and "simple avoidance of activities affected by the impairment.").

Notably, no case referenced by CWF or Plaintiff held that gluten-avoidance was a mitigating measure that the Court had to disregard, as the R&R recommends. See *Phillips I*, *Phillips II*, *Kelly*, *Nolan*. In reaching his recommendation that the Court should not consider Plaintiff's ability to avoid gluten, the Magistrate had to go outside the realm of gluten cases, and relied instead on *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850 (9th Cir. 2009) and *Kravstov*. This reliance was misplaced because the mitigating measures involved in those cases were proactive in nature, not the avoidance of a single substance. The plaintiff in *Rohr* "had to follow a 'very demanding regimen' to manage his diabetes. In addition to daily injections of insulin, he had to test his blood sugar three to four times a day, could not eat large meals or skip meals and needed to snack on something every few hours." *Rohr* at 855. The plaintiff in *Kravstov* was hypoglycemic and had to eat 8-10 times per day to maintain healthy blood-sugar levels. For both plaintiffs, these actions ameliorated their conditions, but the courts disregarded them because they were proactive, mitigating tasks.

Unlike the plaintiffs in *Rohr* and *Kravstov*, J.D. does not need to take proactive steps such as injecting himself with insulin daily, pricking his finger for blood three to four times per day, eating many, small meals, and ensuring that he never misses a meal.  He only needs to avoid gluten. Stated differently, he cannot claim disabled status by exposing himself to the one thing that will make him sick.  As the Ninth Circuit noted in *Fraser*, "[n]ot every [dietary] impediment…is a substantial limitation of the major life activity of eating."  342 F.3d at 1041.  Nobody can eat whatever they want whenever they want without experiencing some impact on their health.  If avoiding certain types or quantities of foods is a "mitigating measure," then nearly everyone has an eating disability.  In determining whether J.D. is disabled, the Court should consider the eating limitations he faces "as compared to most people in the general population" (28 C.F.R. § 36.105(d)(1)(v)) – i.e., reasonably-diligent people who avoid foods that cause them health problems.  J.D. experiences no complications if he avoids gluten, and thus there is no genuine issue as to whether he is disabled.

## V.      CONCLUSION

For the reasons given above, CWF respectfully requests that this Court sustain its objections, hold that Plaintiff is not disabled as a matter of law, grant CWF's motion for summary, dismiss Plaintiff's complaint with prejudice, and award CWF its costs and attorneys' fees incurred in this litigation.

Dated: April 10, 2018                              Respectfully submitted,

**COLONIAL WILLIAMSBURG
FOUNDATION**

By: _____/s/_____

Robert W. McFarland (VSB # 24021)
McGuireWoods LLP
World Trade Center
101 West Main Street, Ste 9000

Norfolk, Virginia 23510
(Office) (757) 640-3716
(Fax) (757) 640-3966
rmcfarland@mcguirewoods.com

Dana L. Rust (VSB # 28408)
Micah B. Schwartz (VSB # 77299)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219
(Office) (804) 775-1000
(Fax) (804) 698-2158
drust@mcguirewoods.com
mschwartz@mcguirewoods.com

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of April, 2018, a true copy of the foregoing was filed with the Court using the CM/ECF system, which will send notification of such filing to the following:

Michael S. Stein
Mary Vargas
STEIN & VARGAS, LLP
840 First Street, NE
Third Floor
Washington, DC 20002


/s/
Dana L. Rust (VSB # 28408)
Micah B. Schwartz (VSB # 77299)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
(Office) (804) 775-1000
(Fax) (804) 698-2158
drust@mcguirewoods.com
mschwartz@mcguirewoods.com

*Counsel for Defendant*

11